**Tanya BLATT, et al., Plaintiff**

v.

**PACIFIC EMPLOYERS INS. CO., et al., Defendants.**

No. 301CV7575.

United States District Court,
N.D. Ohio,
Western Division.

Aug. 30, 2002.

Joseph T. Joseph, R. Jack Clapp, Law Office of R. Jack Clapp, Cleveland, OH, Plaintiff.

Jennifer V. Sammon, Reminger & Reminger, Michael L. Golding, Moscarino & Treu, Steven J. Forbes, Moscarino & Treu, Cleveland, OH, for Defendants.

## ORDER

CARR, District Judge.

This is an insurance coverage case in which the parties have filed cross-motions for summary judgment. For the reasons that follow, defendants' motions shall be denied, and plaintiffs' motion shall be granted.

Plaintiffs Tanya Blatt and Brad Blatt are husband and wife. Tanya was injured seriously while riding as a passenger in a car driven by one Lawrence Morgan. Morgan drove into an intersection without stopping, colliding with another vehicle. Tanya has recovered against the tortfeasor, but remains uncompensated for the full extent of her injuries.

Plaintiffs claim coverage under a policy issued by the defendant Pacific Employers Insurance Company (Pacific) to Brad's employer, the defendant Harsco Corporation. That policy contained an under/uninsured motorists (UIM) endorsement which defined "an insured" as:

1. You.

2. If you are an individual, any "family member".

3. Anyone else "occupying" a covered "auto" . . . .

4. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another insured.

Plaintiffs assert that they are entitled to UIM coverage on the basis of the Ohio Supreme Court's decision in *Scott–Pontzer v. Liberty Mutual Fire Insurance Co.*, 85 Ohio St.3d 660, 710 N.E.2d 1116 (1999). In that case, the court held that an employee was entitled to UIM coverage provided to his employer in the employer's business coverage policy.

Defendant Pacific seeks summary judgment on the basis that: 1) Brad was not an employee of defendant Harsco at the time of the accident, 2) Tanya was not riding in a covered auto, and 3) any coverage is excluded under the "other owned auto" exclusion of the Pacific policy.

With regard to the issue of whether Tanya was in a "covered auto," Pacific recites the language of its policy defining covered autos as "Only those 'autos' you own .... "With regard to the other owned auto exclusion, Pacific points to its exclusion of injuries sustained when occupying or struck by a vehicle owned by the insured or a family member that is not a covered auto under the policy, or by a vehicle that is insured under UIM coverage.

In addition, Pacific argues that, even if the plaintiffs are entitled to UIM coverage, such coverage is limited to the amount of such coverage purchased by Harsco ($25,000), less an offset for the recovery obtained from the tortfeasor ($12,500).

Defendant Harsco seeks summary judgment on the basis that it is self-insured under its policy with Pacific, so that the statute on which the *Scott–Pontzer* decision is based, O.R.C. § 3937.18 does not apply. Harsco also argues that, to the extent that plaintiffs contend that there is a defect in the Specification Form between it and Pacific (i.e., whereby Harsco limited its UIM coverage to $25,000), plaintiffs do not have standing to challenge the validity of the declination form and the ensuing limitation of UIM coverage to that amount.

## 1. Brad Blatt Was a Harsco Employee

■ Pacific claims that, no matter what *Scott–Pontzer* held or stands for, plaintiffs in this case do not come within its reach, because, at the time of the accident Brad was not an employee of Harsco. Pacific bases this contention on the fact that, on the date of Tanya's accident, Brad had been voluntarily laid off, and thus was not working for Harsco as of that date.

In response to this contention, plaintiffs have submitted evidence, which the defendants do not refute, that the voluntary layoff was a customary and recurrent event in the industry. Harsco asked Brad to be laid off voluntarily for a defined period (sixty days, subject to extension). If he did not return when recalled to work, he would be terminated. Perhaps most importantly, Brad received employee benefits from Harsco, including seniority, attendance, and health benefits. In addition, he returned to work at Harsco. In the meantime, he had received his pay for at least one paid holiday.

Brad and Harsco clearly had a continuing relationship, even though he was not at the plant, working, or earning an income. His absence was viewed by both Harsco and him as temporary, rather than permanent. I conclude, on the basis of undisputed facts, that Brad was an Harsco employee when his wife was injured.

## 2. Plaintiffs are Entitled to UIM Coverage Even Though Tanya Was a Passenger in an Auto Owned by a Third Party

■ As noted, neither plaintiff owned the vehicle in which Tanya was riding when she was injured. In light of that fact, Pacific argues that there is no cover-

age because Tanya was not in a "covered auto" under the policy.

I conclude, in light of *Scott–Pontzer* and the Ohio Supreme Court's subsequent decision in *Ezawa v. Yasuda Fire & Marine Ins. Co. of America*, 86 Ohio St.3d 557, 715 N.E.2d 1142 (1999) that the "covered auto" provision does not bar plaintiffs' claim for UIM coverage under the Pacific policy. In both those cases, the injured parties were not riding in their own vehicles; they were, rather, as in this case, riding in a vehicle owned by a third party.

It might be argued that this was an incidental fact in *Scott–Pontzer*, as to which the Ohio Supreme Court reached no express ruling. That argument loses considerable force, however, in light of *Ezawa*, in which the majority of the court, without expressing its reasons, beyond citing *Scott–Pontzer*, reversed an appellate decision denying insured status to an employee's family member.

Although, as in *Scott–Pontzer*, the issue of "covered auto" had not been joined in the lower courts, *see Ezawa v. Yasuda Fire & Marine Ins. Co. of America*, 1998 WL 353871 (Ohio App. 10 Dist. June 30, 1998), *rev'd*, 86 Ohio St.3d 557, 715 N.E.2d 1142 (1999), Justice Lundberg Stratton's dissent makes clear that the Court was aware of the fact that coverage was being extended to a vehicle operated by a third party:

> Koichiro Ezawa, a minor, was injured in an accident while a passenger in an automobile driven by Diedre Soler. Ezawa's damages exceeded the $250,000 per person limit of Soler's liability insurance policy. At the time of the accident, Ezawa's father, Fumiko Ezawa, was employed by Tomasco Mulciber, Inc. ("Tomasco"). Tomasco had a business automobile insurance policy issued by appellee Yasuda Fire & Marine Insurance Company of America ("Yasuda"). Although Ezawa was injured by a third party who was not a Tomasco employee and was not in a vehicle covered by Tomasco's insurance policy, Ezawa and his father, nevertheless, made an underinsured motorists ("UIM") claim against the Yasuda policy issued to Fumiko Ezawa's employer.

> The trial court granted Yasuda's motion for judgment on the pleadings because, based on the unambiguous language in the Yasuda policy, Koichiro was not an "insured" as that term is defined in the policy. The court of appeals affirmed.

> The Yasuda policy was issued to a corporation. According to the language of the policy, UIM coverage extends to family members of the insured only if the named insured is an individual. Here, it is not. Yet the majority applies its convoluted reasoning in *Scott–Pontzer* to once again extend the reach of UIM coverage. *Now a corporate policy must afford UIM coverage to an employee's minor son who was injured by a non-employee while riding in a non-covered vehicle and whose injuries had nothing to do with the corporation's business.*

> Pandora's Box continues to release its contents.

*Id.* at 558–59, 715 N.E.2d 1142 (Lundberg Stratton, J., dissenting) (emphasis supplied).

That the Ohio Supreme Court would decide this issue as Justice Lundberg Stratton believes it has already been endorsed sub silentio in *Ezawa* finds additional support in the Court's observation in *Scott–Pontzer* that, "uninsured motorist coverage, mandated by law pursuant to R.C. 3937.18, was designed by the General Assembly to protect persons, not vehicles." 85 Ohio St.3d at 664, 710 N.E.2d 1116 (citing *Martin v. Midwestern Group Ins.*

*Co.,* 70 Ohio St.3d 478, 639 N.E.2d 438 (1994) (Syllabus ¶ 1)).

The cases cited by the defendant do not refute this assessment of the direction in which Ohio law appears to be headed.

Thus, in *Houser v. Motorists Ins. Co.,* 2002 WL 1299778 (Ohio App. 3 Dist. June 4, 2002), the policy specifically limited UIM coverage to autos owned by an insured. A car owned by a decedent's co-worker was held not to be a covered auto. The court did not discuss whether the co-worker's ownership of the vehicle might have given rise to coverage on the basis that he, like the decedent, was an employee of the employer-policyholder. The court's focus was, rather, on language in the policy that extended UIM coverage only to " 'autos' you own"—i.e., owned by the plaintiff's decedent. Thus, this decision does not stand for the proposition that a person riding in a third party's auto cannot be covered under that person's employer's UIM policy.

In *Stewart v. Oglebay Norton Marine Services Co.,* 2002 WL 737094 (Ohio App. 6th Dist. April 26, 2002), the employee had no connection with an accident, in which his sister, who owned the vehicle involved in the accident, was killed.

I conclude, accordingly, that the "covered auto" provision is not a bar to UIM coverage in favor of plaintiffs.

### 3. The "Other Owned Auto" Exclusion Does Not Limit Coverage

■ The Pacific policy excludes coverage where injuries occur while occupying or struck by any vehicle that is either not a covered auto or is covered by the policy's UIM provisions.

As discussed in the preceding section, even though the vehicle in which Tanya was riding was not a "covered auto" under the Pacific policy, it appears likely that the Ohio Supreme Court would extend UIM benefits under the policy to her. If that conclusion is valid, then its rationale—that the UIM benefits under the Pacific policy flow from Brad's status as a Harsco employee, whether the auto in which Tanya was riding was a covered auto or not— would likewise apply to this exclusion. *See Allen v. Johnson,* Nos. 01CA0046, 01CA0047, 2002 WL 1065872 (Ohio App. 9th Dist. May 22, 2002).

I conclude, accordingly, that the other owned auto exclusion does not bar UIM coverage in this case.

### 4. Harsco is Not a Self-Insurer

■ The Pacific policy provided $1,000,000 single liability coverage. Harsco's deductible was $250,000. Harsco argues that it should be deemed self-insured up to the amount of its deductible.

■ Ohio's UIM statute is not applicable to self-insurers. *See, e.g., Grange Mutual Casualty Co. v. Refiners Transport & Terminal Corp.,* 21 Ohio St.3d 47, 49–50, 487 N.E.2d 310 (1986). The statute likewise is not applicable to entities who can be viewed as being self-insured "in a practical sense." *Id.* at 49, 487 N.E.2d 310. Courts disagree as to whether a "fronting agreement," whereby the deductible equals the coverage limit, makes the insured a self-insurer "in a practical sense." *Compare Lafferty v. Reliance Ins. Co.,* 109 F.Supp.2d 837, 841 (S.D.Ohio 2000) (such so-called "fronting agreements" have effect of making insured a self-insurer) and *McCollum v. Continental Ins. Co.,* 1993 WL 382455 (Ohio App. 6th Dist. 1993) *with Dalton v. Wilson,* 2002 WL 1813508, *10 (Ohio App. 10th Dist. Aug. 8, 2002) (declining to follow *Lafferty* and *McCollum* because those cases "extend *Grange* well beyond its holding.").

Harsco cites no support for its novel argument that it should be deemed self-insured for the amount of its deductible. As is typical in any policy that contains a deductible, Harsco retained, to a limited

extent, the risk of loss. But it certainly did not become a self-insurer, as that term has been used by Ohio's courts, because the entire risk of loss was not shifted to Harsco. *Cf. McCollum, supra,* 1993 WL 382455, *4 ("A self-insurer retains the risk of loss imposed by law or contract insurance.") (citing *Physicians Ins. Co. of Ohio v. Grandview Hosp. & Med. Ctr.* 44 Ohio App.3d 157, 158, 542 N.E.2d 706 (1988)).[1]

### 5. UIM Coverage Was Not Validly Reduced

Pacific argues that, even if UIM coverage is available to plaintiffs under its policy with Harsco, the policy expressly limits such coverage to $25,000. Harsco's acceptance of reduced UIM coverage was reflected in the Selection Form signed by Harsco's authorized corporate representative, Stephen Baney.[2] Such limitation, defendant contends, was lawful, and Harsco's decision to accept that amount of UIM coverage conformed to the requirements of § 3937.18(C).[3]

■ In response to defendants' contention that Harsco limited its UIM coverage and the requirements of § 3937.18(C), as amended by H.B. 261, were satisfied, plaintiffs argue that the process leading to Harsco's reduction of such coverage failed to comply with the mandates of *Gyori v. Johnston Coca–Cola Bottling Group, Inc.,* 76 Ohio St.3d 565, 569, 669 N.E.2d 824 (1996), and *Linko v. Indemn. Ins. Co. of N. Am.,* 90 Ohio St.3d 445, 739 N.E.2d 338 (2000).

As plaintiffs point out, the Selection Form was signed on July 18, 2000, more than two weeks after the policy's June 30, 2000, commencement date. In *Gyori,* the Ohio Supreme Court held that a written rejection of UIM coverage must be received prior to the policy's commencement date, plaintiffs assert that the reduction of UIM coverage was ineffective.

This aspect of *Gyori* was, however, abrogated by H.B. 261. *See Comella v. St. Paul Mercury Ins. Co.,* 177 F.Supp.2d 690 (N.D.Ohio 2001) (H.B. 261 "invalidated *Gyori's* requirement that the rejection must be received prior to the commencement of the policy year."); *Raymond v. Sentry Ins.,* 2002 WL 360736, *2 (Ohio App. 6 Dist.) (same). Thus, the timing of the submission of the Selection Form is immaterial.

■ Plaintiffs next contend that the process whereby Harsco sought to reduce

---

1. In light of my conclusion that Harsco is not a self-insurer, its argument that plaintiffs do not have standing to challenge defects in the procedure by which Harsco sought to reduce UIM coverage, as discussed in § 5 herein, has no merit.

2. Plaintiffs claim that the record is not sufficient to show that Baney signed the Selection Form. That argument is based on Pacific's submission during discovery of a copy of an unsigned form. Pacific supports its motion for summary judgment with a copy of a signed form. Plaintiffs have not alleged that the form that accompanies Pacific's motion is a forgery or raised any other meaningful doubts about its authenticity. Thus, I conclude that there is no genuine dispute about the authenticity of that form.

3. Section 3937.18(C), as amended by H.B. 261, and effective during the applicable policy period, provided:

    A named insured or applicant may reject or accept [UM/UIM] coverages as offered . . . , or may alternatively select both such coverages in accordance with a schedule of limits approved by the superintendent. The schedule of limits approved by the superintendent may permit a named insured or applicant to select uninsured and underinsured motorists coverages with limits on such coverages that are less than the limit of liability coverage provided by the automobile liability or motor vehicle liability policy of insurance under which the coverages are provided, but the limits shall be no less than the limits set forth in section 4509.20 7 of the Revised Code for bodily injury and death.

the extent of its UIM coverage did not conform to the requirements for doing so, as prescribed in *Linko*. In that case, the Ohio Supreme Court stated that an insurer's offer and an insured's rejection or reduction of UIM coverage would be valid only where the insurer had: 1) informed the insured of the availability of UIM coverage; 2) stated the premium for the coverage; 3) included a brief description of the coverage; and 4) expressly stated the UIM coverage limits in its offer. 90 Ohio St.3d at 447, 739 N.E.2d 338.

Plaintiffs argue that the Selection Form did not comply with the requirements of *Linko*, because it stated neither the premium for UIM coverage nor the coverage limits. *See German vs. Therm–O–Disc, Inc.*, 2002 WL 553155, *5 (Ohio App. 5th Dist. March 28, 2002) (failure to fails to set forth the premium or state the coverage limits invalidated rejection of UIM coverage).

In response to this contention, defendants argue that Linko interpreted an earlier version of § 3937.18(C). That version, unlike the H.B. 261 version at issue here, did not include a presumption that the insurer had made a valid written offer. Thus, defendants argue, Linko has no application to this case.

Subsequent to the adoption of H.B. 261, the Ohio Supreme Court affirmed its holding in *Gyori*. *See Schumacher v. Kreiner*, 88 Ohio St.3d 358, 725 N.E.2d 1138 (2000) (absent timely written offer and rejection of UIM coverage, such coverage arises by operation of law). Moreover, Ohio's lower courts have held that the requirements of Linko apply to policies subject to H.B. 261. • *See Roper v. State Auto. Mut. Ins. Co.*,

2002 WL 1389831, (Ohio App. 1 Dist.) (Linko requirements applicable to policy subject to H.B. 261); *Edstrom v. Universal Underwriters Ins. Co.*, 2002 WL 1379205, *4 (Ohio App. 10 Dist.) (H.B. 261 did not eliminate requirements prescribed by Linko ); *Raymond*, 2002 WL 360736, *2 (H.B. 261, adopted three years prior to decision in Linko could not have negated that holding; Linko not abrogated until 2001 by Am. Sub. S.B. 97); *Pillo v. Strickland*, 2002 WL 137255, *3 (Ohio App. 5th Dist. Jan. 28, 2002) (H.B. 261 did not eliminate Linko requirements).

In light of the foregoing decisions,[4] I conclude that UIM coverage is available to plaintiffs by operation of law because the Selection Form does not satisfy the requirements of *Linko*. Consequently, the presumption of a valid written offer described in § 3937.18 is not applicable.

### Conclusion

In light of the foregoing, I conclude, on the basis of the undisputed facts, that: 1) plaintiff Brad Blatt was a Harsco employee; 2) plaintiffs are entitled to UIM coverage; 3) the other owned auto exclusion does not limit such coverage; 4) Harsco is not a self-insurer; and 5) UIM coverage was not validly reduced.

It is, therefore,

ORDERED THAT defendants' motions for summary judgment be, and the same hereby are denied; and plaintiffs' motion for summary judgment be, and the same hereby is granted.

So ordered.

---

4. To the extent that my decision in *Hindall v. Winterthur Intern.*, 2001 WL 339459 (N.D.Ohio), is inconsistent with the result I reach here, I am persuaded that the decisions of the Ohio courts (none of which had considered the issue at the time of my ruling in *Hindall* ) should be followed in light of their unanimity and persuasive interpretation of Ohio law.