**Jody L. REDD, et al., Plaintiffs,**

v.

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., et al., Defendants.**

**No. C–3–01–106.**

United States District Court,
S.D. Ohio,
Western Division.

Jan. 22, 2003.

Kenneth J. Ignozzi, Dyer Garofalo Mann & Schultz, Dayton, OH, for Plaintiffs.

Daniel R. Mordarski, Daniel R. Freytag, Zeiger & Carpenter LLP, Columbus, OH, for Defendant General Motors Corp.

**ENTRY AND ORDER GRANTING DEFENDANTS GM AND NATIONAL UNION'S MOTIONS FOR SUMMARY JUDGMENT (Doc. # 15, 22); DENYING PLAINTIFF REDD'S MOTIONS FOR SUMMARY JUDGMENT (Doc. # 13, 14, 18); AND DISMISSING ALL COUNTS OF REDD'S COMPLAINT**

ROSE, District Judge.

This cause arises from a vehicle accident in which Plaintiff Jody Redd was injured. The accident occurred on May 23, 1998, and was caused by Anthony Newcomb. Mr. Newcomb was insured by Allstate Insurance Co. ("Allstate") at the time of the accident. Allstate paid Jody Redd the policy limits to settle the liability claim.

At the time of the accident, Jody Redd was employed by Defendant General Motors Corporation ("GM") and Plaintiff Kathy Redd, Jody Redd's wife, was allegedly living in the same household as Jody Redd. Also at the time of the accident, GM owned a primary Business Auto Insurance Policy ("BA Policy"), an excess BA Policy and a General Liability Insurance Policy ("GL Policy") issued by Defendant National Union Fire Insurance Company of Pittsburgh, PA ("National Union").

The First Claim of Jody Redd's four-claim Complaint is for uninsured/underinsured ("UM/UIM") coverage under the primary and excess BA Policies. The Second Claim is for UM/UIM coverage under the GL Policy. The Third Claim is a negligence claim against Anthony Newcomb ("Newcomb") and/or Evenly Huffman ("Huffman"), who are not named as defendants. The Fourth Claim is against Newcomb and/or Huffman for loss of consortium.

Now before the Court are Plaintiffs' Motion for Partial Summary Judgment Under the Business Automobile Liability and Business Automobile Excess Policies (Doc. # 13), Plaintiffs' Motion for Partial Summary Judgment Under the Commercial General Liability Policy (Doc. # 14), Plaintiffs' Cross Motion for Summary Judgment against GM (Doc. # 18), Defendant GM's Cross Motion for Summary Judgment (Doc. # 15), National Union's Cross Motion for Summary Judgment (Doc. # 22) and the Parties' Briefs and associated documents including Redd, GM and National

Union's Supplemental Authority (Doc. # 30, 31, 32, 36 and 40). The standard of review for motions for summary judgment will first be set forth followed by an analysis of each of Redds' claims with regard to the Motions for Summary Judgment.

### Standard of Review

The standard of review applicable to Motions for Summary Judgment is established by Federal Rule of Civil Procedure 56 and the associated caselaw. Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir.1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505 (quoting Fed.R.Civ.P. 56(e)).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affiants are more credible. 10A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 2726. Rather, credibility determinations must be left to the fact-finder. *Id.*

Finally, in ruling on a motion for summary judgment, "[a] district court is not ...obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir.1989), *cert. denied*, 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). Thus, in determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evi-

dence specifically called to its attention by the parties. The Rule 56 evidence includes the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted. Fed.R.Civ.P. 56(c). The analysis now turns to each of Redd's Claims.

### First Claim—UM/UIM Coverage Under the BA Policies

The First Claim of Jody Redd's four-claim Complaint is for uninsured/underinsured ("UM/UIM") coverage under the primary and excess BA Policies. Redd argues that he is an insured under the BA Policies pursuant to the Ohio Supreme Court's holding in *Scott–Pontzer v. Liberty Mutual Fire Insurance Company,* 85 Ohio St.3d 660, 710 N.E.2d 1116 (1999). He further argues that National Union was required by Ohio's UM/UIM statute, Ohio Revised Code § 3937.18, to offer UM/UIM coverage and did not do so. Therefore, according to Redd, he has UM/UIM coverage by operation of law.

GM and National Union respond that GM is self-insured through a risk management program in which the BA Policies are part of a "fronting" policy arrangement and the self-insurance program is not subject to Ohio's UM/UIM statute. They also argue that Michigan law applies to the interpretation of the BA Policies and Michigan law rejects the *Scott–Pontzer* analysis for determining who is an insured. The analysis begins with a determination of which state's law should be used to interpret GM's insurance arrangements.

■ This is an action brought by Jody Redd, who alleges that he is an insured, against National Union, Redd's alleged insurance company, for UM/UIM coverage. "An action by an insured against his or her insurance carrier for payment of underinsured motorists benefits is a cause of action sounding in contract, rather that tort

. . ." *Ohayon v. Safeco Insurance Company of Illinois,* 91 Ohio St.3d 474, 747 N.E.2d 206 (2001), at the syllabus (Ohio 2001). Further, "Questions involving the nature and extent of the parties' rights and duties under an insurance contract's underinsured motorist provisions shall be determined by the law of the state selected by applying [the Restatement's choice-of-law rules]." *Id.* The Restatement's choice-of-law rules for contracts provide that the law of the state chosen by the parties to a contract will govern their contractual rights and duties. *Id.* at 209 (quoting 1 *Restatement (Second) of the Law of Conflict of Laws 2d* (1971), § 188(1)). Absent such a choice by the parties, courts should consider: (1) the place of contracting; (2) the place of negotiation; (3) the place of performance; (4) the location of the subject matter and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties. *Id.*

■ In this case, GM indicates that no express choice of law has been made in the policies. Absent this choice, the factors set forth in the Restatement are used.

Regarding the place of contracting, the BA Policies were made in Michigan. (Judd Aff. ¶ 9.) Regarding the place of negotiations, the BA Policies were negotiated in Michigan and issued to GM in Michigan. (Judd.Aff.¶¶ 8–9.) Regarding the place of performance, the BA Policies were issued to GM in Michigan and adjusting services and payments made under the insurance program are coordinated and made by the Detroit, Michigan office of ESIS, Inc. (Judd Aff. ¶¶ 5, 8, 9.) Regarding the location of the subject matter of the policies, a majority of GM employees are located in Michigan, over 70% of the vehicles owned by GM are located in Michigan and GM has more insurable property, by value, located in Michigan that in any other state. (Judd Aff. ¶ 10.) Finally,

regarding the location of the parties, GM's principal place of business is arguably at its global headquarters in Michigan and National Union is arguably located in Pennsylvania. Although the location of the accident giving rise to the injuries was in Ohio and the alleged insureds were located in Ohio, these contacts are not a consideration for choice-of-law regarding contract interpretation.

The Restatement's choice-of-law rules overwhelmingly point to the use of Michigan law to determine the parties' rights and duties under the BA Policies. According to the Rule 56 evidence before the Court, all of the factors except one took place in Michigan. The exception is the location of the parties with GM in Michigan and National Union in Pennsylvania.

Although Redd argues the relative importance of the above contacts, he does not offer any contrary evidence regarding the location of the applicable contacts. Redd also points to the Restatement for the argument that, when interpreting the risk covered by an insurance contract, it can often be assumed that the parties would expect the law of the State where the risk is located to be used. *Restatement* § 188, comment e. In this case, over 70% of the vehicles owned by GM and a majority of GM's employees are located in Michigan. (Judd Aff. ¶ 10.) Although Rule 56 evidence has not been presented specifically on this issue, since most of GM's vehicles and a majority of GM's employees are located in Michigan, it is reasonable to think that, if they had an expectation, GM and National Union would expect Michigan law to govern the insurance contract.

Redd also argues that Ohio law should be used. His argument is based on the Ohio Supreme Court's holding in *Henderson v. Lincoln National Speciality Ins. Co.*, 68 Ohio St.3d 303, 626 N.E.2d 657 (1994). This Court has addressed the ap-

plicability of the *Henderson* holding to choice-of-law issues in more detail in another Entry and Order in this matter. In sum, in the *Henderson* decision reached seven years before *Ohayan*, the Ohio Supreme Court was interpreting a section of the Ohio Revised Code and not addressing choice-of-law issues. Therefore, arguments based on the *Henderson* holding are not appropriate in a situation where another state's law applies.

■ Having determined that Michigan law applies, the analysis now turns to Michigan law. Unlike Ohio's *Scott–Pontzer* holding, Under Michigan law, "you" does not mean employees of the named insured while they are not occupying a covered automobile. *Michigan Township Participating Plan v. Pavolich,* 232 Mich. App. 378, 591 N.W.2d 325, 328 (1998) (rejecting a *Scott–Pontzer* type argument that an employee of a village was covered under the village's UM/UIM coverage). In this case, there is no Rule 56 evidence before the Court that Redd was occupying a covered automobile. The Complaint indicates that Redd was a pedestrian at the time of the accident. (Compl.¶ 23.) Therefore, pursuant to Michigan law, Redd, as an employee of GM, is not an insured under the BA Policies for the injuries for which he complains.

In addition to arguing that Michigan law applies and Redd is not an insured thereunder, GM and National Union argue that the BA Policies are part of a risk management program which makes GM self insured. Redd argues that GM is not self insured.

■ If GM is not self insured, then the BA Policies are in effect and, as determined herein, Redd is not entitled to coverage. If, on the other hand, GM is self insured, then the BA Policies do not meet the definition of "policies of insurance" and

Ohio's UM/UIM statute does not apply to create UM/UIM coverage as a matter of law. Ohio Rev.Code Ann. § 3937.18 (applies only to "policies of insurance"); *Grange Mutual Casualty Co. v. Refiners Transport & Terminal Corp.*, 21 Ohio St.3d 47, 487 N.E.2d 310, 314 (1986) (Ohio's UM/UIM statute does not apply to those who are self insured).

GM further indicates that, as part of its self insurance program, it provides the practical equivalent of UM/UIM coverage for individuals occupying vehicles owned by GM. GM also indicates that UM/UIM coverage does not apply to Redd because Redd's accident did not involve a vehicle owned by GM. Redd does not dispute this argument and is therefore not entitled to this coverage. In any case, Redd's claim for coverage under the BA Policies fails.

There are no genuine issues of material fact and GM and National Union are entitled to judgment on Redd's First Claim as a matter of law. Redd's Motion for Summary Judgment on his First Claim is DENIED and the Claim is DISMISSED. The analysis now turns to Redd's Second Claim.

### Second Claim—UM/UIM Coverage Under the GL Policy

The Second Claim of Jody Redd's four-claim Complaint is for uninsured/underinsured ("UM/UIM") coverage under the GL Policy. Redd alleges here, as he did regarding the BA Policies, that he is an insured under the GL Policy pursuant to the Ohio Supreme Court's holding in *Scott–Pontzer*. He further alleges, as he did regarding the BA Policies, that National Union was required by Ohio's UM/UIM statute to offer UM/UIM coverage and did not do so. Therefore, according to Redd, he has UM/UIM coverage by operation of law.

GM and National Union respond, as they did to Redd's claim on the BA Policy, that GM is self-insured through a risk management program in which the GL Policy is part of a "fronting" policy arrangement and the self-insurance program is not subject to Ohio's UM/UIM statute. They also argue, as they did against the BA Policy claim, that Michigan law applies to the interpretation of the GL Policy and Michigan law rejects the *Scott–Pontzer* analysis for determining who is an insured.

■ The choice-of-law analysis for the GL Policy is essentially the same as the analysis for the BA Policies. The Restatement's choice-of-law factors are used to determine which state's laws are used and they overwhelmingly point to Michigan. The GL Policy was negotiated in Michigan and issued to GM in Michigan. (Judd.Aff.¶¶ 8–9.) Adjusting services and payments made under the insurance program are coordinated and made by the Detroit, Michigan office of ESIS, Inc. (Judd Aff. ¶¶ 5, 8, 9.) A majority of GM employees are located in Michigan, over 70% of the vehicles owned by GM are located in Michigan and GM has more insurable property, by value, located in Michigan than any other state. (Judd Aff. ¶ 10.) GM's principal place of business is arguably at its global headquarters in Michigan and National Union is arguably located in Pennsylvania.

■ Redd's arguments against the application of the Restatement's choice-of-law factors and the result are the same here as they are against the BA Policy and they are equally as unpersuasive. Michigan law applies and, as determined herein, Michigan law rejects a *Scott–Pontzer* type argument regarding who is an insured. Therefore, Redd is not an insured under the GL Policy.

As with the BA–Policy claim, the parties argue whether GM is self insured. As with the BA Policies, if GM is not self insured, then the GL Policy is interpreted using Michigan law and Redd is not entitled to coverage. If GM is self insured, Ohio's UM/UIM statute does not apply to cause UM/UIM coverage to exist as a matter of law. In either case, Redd is not entitled to coverage under the GL Policy.

There are no genuine issues of material facts and GM and National Union are entitled to judgment on Redd's Second Claim as a matter of law. Redd's Motion for Summary Judgment on his Second Claim is OVERRULED and Redd's Second Claim is DISMISSED. The analysis now turns to Redd's Third Claim.

### Third Claim—Negligence

Redd's Third Claim is against Newcomb and/or Huffman for negligence. None of the parties to this case have sought summary judgment regarding this claim. However neither Newcomb or Huffman are named as Defendants, have been served, or have entered an appearance in this matter. Therefore, Redd's Third Claim against Newcomb and/or Huffman is DISMISSED without prejudice. The analysis now turns to Redd's Fourth Claim.

### Fourth Claim—Loss of Consortium

Redd's Fourth Claim for relief is against Newcomb and Huffman for loss of consortium on behalf of his wife, Kathy Redd. None of the parties have sought summary judgment regarding this claim. However, Redd's claim against Newcomb and Huffman has been dismissed without prejudice. Without the negligence claim against Newcomb and Huffman, Redd cannot sustain a loss of consortium claim against them. In addition, as determined herein, Redd is not an insured under the BA Policies or the GL Policy so Kathy Redd cannot obtain coverage under these policies through Jody Redd. Therefore, Redd's Fourth Claim against Newcomb and/or Huffman is DISMISSED without prejudice and the claim as it may deemed to be against GM and National Union is DISMISSED with prejudice.

### Summary

Pursuant to Ohio's choice-of-law rules, Michigan law applies to the determination of the rights and duties of the parties to the BA and GL policies and Michigan law does not recognize a *Scott–Pontzer* type argument. Therefore Redd is not an insured under either the BA Policies or the GL Policy. GM and National Union's Motions for Summary Judgment regarding Redd's First and Second Claims is GRANTED and those claims are DISMISSED. Redd's Motion for Summary Judgment regarding those claims is DENIED.

Redd's Third and Fourth claims are against Newcomb and/or Huffman who are not named as parties, have not been served and have not entered an appearance in this case. These claims are therefore DISMISSED without prejudice. Also, Redd's Fourth Claim as it may be deemed to be against GM and National Union is DISMISSED with prejudice.

Having dismissed all of Redd's claims in this matter, the captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.