OPINION
STATEMENT OF THE FACTS AND CASE
 {¶ 1} The collision from which this case arises occurred on March 9, 1995. At the time of the accident, Plaintiff-Appellant Amy Vohsing was driving her Volkswagen van with her three children, Max, Ellen and Luke, as passengers. Said vehicle was struck by a vehicle driven by Jay Wampler. Mr. Wampler was insured by Westfield Insurance Company, with limits of $500,000.00. In December, 1996, Plaintiffs-Appellants Amy and William Vohsing signed a release and received a settlement of $30,000.00 from Westfield on behalf of Mr. Wampler. In addition, $500 was paid on behalf of Ellen Vohsing and $3,000 on behalf of Max Vohsing. Luke Vohsing's claims were settled in March, 1998, for $440,000.00.
 {¶ 2} The Vohsings were insured under a policy of insurance issued by Auto-Owners Insurance Company with limits of $300,000.00. Auto-Owners paid its limits in exchange for a release on August 28, 2001.
 {¶ 3} At the time of the accident, William Vohsing was employed with Ernst Young LLP, which had a Business Auto policy through Federal Insurance Company with limits of one million dollars. (Defendant-Appellee was provided notice by Plaintiffs-Appellants of a potential claim under the business auto policy in a letter dated February 9, 2001.)
 {¶ 4} On August 7, 2001, Plaintiffs-Appellants filed their Complaint for Declaratory Judgment, on behalf of Luke W. Vohsing, with the Licking County Common Pleas Court against, inter alia, Federal Insurance Company seeking UIM coverage benefits under Federal's Business Auto policy under a Scott-Pontzer theory of recovery.
 {¶ 5} On July 1, 2002, Defendant-Appellee Federal filed its Motion for Summary Judgment asserting the following positions against entitlement to UIM coverage: (1) the policy does not contain a UM/UIM endorsement requiring such to be imposed by operation of law which would not include family members; (2) appellants breached the notification and subrogation terms and conditions of the policy; (3) Pennsylvania law applies in this matter and Pennsylvania does not recognize a claim for UM/UIM under a Business Auto policy issued to a corporation for injuries sustained by employees or their family members occurring outside the course and scope of employment.
 {¶ 6} On September 17, 2002, trial court issued its Memorandum of Decision and Judgment Entry denying Appellant's Motion for Partial Summary Judgment and granting Appellee's Motion for Summary Judgment, holding that Ohio law does not apply to the policy issued by Appellee, finding instead that the policy was subject to the laws of the State of Pennsylvania.
 {¶ 7} Appellant appeals said decision, assigning the following sole assignment of error:
 ASSIGNMENT OF ERROR {¶ 8} "The trial court erred to the substantial prejudice of plaintiffs-appellants in granting the defendant-appellee's motion for summary judgment on the ground that the policy issued by the defendant-appellee to the plaintiffs-appellants was not subject to Ohio law."
 STANDARD OF REVIEW {¶ 9} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36, 506 N.E.2d 212.
 {¶ 10} Civ.R. 56(C) states, in pertinent part:
 Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.
 {¶ 11} Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall (1997), 77 Ohio St.3d 421, 429, 1997-Ohio-259,674 N.E.2d 1164, citing Dresher v. Burt, 75 Ohio St.3d 280,1996-Ohio-107, 662 N.E.2d 264.
 {¶ 12} It is based upon this standard we review appellant's assignment of error.
 I. {¶ 13} In Appellants' sole assignment of error, they assert the trial court erred in granting summary judgment in favor of Federal Insurance Company upon a finding that Pennsylvania law governs the Federal policy. We agree.
 {¶ 14} The trial court based its decision that Pennsylvania law applies in the case sub judice on Ohayon v. Safeco Ins. Co. of Illinois,91 Ohio St.3d 474, 2001-Ohio-100, 747 N.E.2d 206, wherein the Ohio Supreme Court held:
 {¶ 15} "1. An action by an insured against his or her insurance carrier for payment of underinsured motorist benefits is a cause of action sounding in contract, rather than tort, even though it is tortious conduct that triggers applicable contractual provisions. (Citation omitted.)
 {¶ 16} "2. Questions involving the nature and extent of the parties' rights and duties under an insurance contract's underinsured motorist provisions shall be determined by the law of the state selected by applying the rules in Sections 187 and 188 of the Restatement of the Law 2d, Conflict of Laws (1971). (1 Restatement of the Law 2d, Conflict of Laws [1971], Section 205, applied.)" Id. at para. one and two of syllabus."
 {¶ 17} In Ohayon, supra, the Court noted, in the absence of an express choice of law provision in a contract, a trial court should consider the factors enumerated in Restatement (2nd) of Conflict of Laws, Section 188, to determine which state's law is applicable. A trial court must determine which state has "the most significant relationship to the transaction and the parties." Id. at 477 (Citation omitted). To assist in such determination, a trial court should consider "the place of contracting, the place of negotiation, the place of performance, the location of the subject matter, and the domicile, residence, nationality, place of incorporation and place of business of the parties." Id.
 {¶ 18} The Ohayon Court continued, "the rights created by an insurance contract should be determined `by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship * * * to the transaction and the parties'." Id. at 479. (Emphasis and citation omitted). The Supreme Court explained, "in the case of an automobile liability policy, the parties will usually know beforehand where the automobile will be garaged at least during most of the period in question." Id. at 479-480. (Citation omitted).
 {¶ 19} Applying the Restatement factors, the trial court found that the applicable law should be that of Pennsylvania since "Pennsylvania is the place of negotiating, contracting, underwriting, issuance and delivery of the policy."
 {¶ 20} It should be noted that Pennsylvania law does not recognizeScott-Pontzer claims or imply UM/UIM coverage as a matter of law.
 {¶ 21} Upon review of the case sub judice, we find same to be factually distinguishable from Ohayon, supra. In Ohayon, the policy of insurance was issued in Ohio to an Ohio resident. The choice of law issue arose when the Ohio resident was involved in a motor vehicle accident in the state of Pennsylvania. The Plaintiff in Ohayon sought to have Pennsylvania law apply to avoid the anti-stacking clause contained in the Ohio UM/UIM endorsement of the Safeco policy. The Supreme Court held that Ohio law applied.
 {¶ 22} In the case at bar, we must determine whether Ohio law, or more specifically, whether R.C. 3937.18 applies, to a policy of insurance which was issued and delivered in a state other than Ohio, but covers automobiles principally garaged in the State of Ohio.
 {¶ 23} This issue was presented to the Ohio Supreme on a certified question by the United States District Court for the Northern District of Ohio in Henderson v. Lincoln Natl. Specialty Ins. Co. (1994),68 Ohio St.3d 303, 626 N.E.2d 657. In Henderson, the Ohio Supreme Court held that statute prescribing mandatory offering of uninsured and underinsured motorist coverage applies to motor vehicle liability insurance policy covering vehicles registered and principally garaged in Ohio, even when policy was not delivered or issued for delivery in Ohio by insurer.
 {¶ 24} As the Ohio Supreme Court has interpreted R.C. '3937.18(A) to apply to insurance policies delivered out of state, but which cover vehicles registered or garaged in Ohio, we find that the Federal insurance policy issued to Ernst Young was subject to Ohio law, not Pennsylvania law.
 {¶ 25} Furthermore, even under an Ohayon analysis, we find the factors the Ohayon Court found to be most significant, as discussed supra, favor the application of Ohio law to the instant matter: (1) the accident occurred in Ohio, (2) the Appellants were domiciled in Ohio, (3) Appellant's vehicle was garaged in Ohio and that Ernst Young had company vehicles principally garaged in Ohio, and (4) Federal and Ernst Young both have their principal places of business in New Jersey, but both do business in Ohio.
 {¶ 26} At the time of the accident, Ernst Young owned and/or had covered six vehicles under the Federal policy. These vehicles were garaged in Ohio and Indiana. Of those six vehicles, four were located and/or principally garaged in Ohio. The Federal policy, while it does not contain an Ohio uninsured motorist coverage endorsement form, did charge a separate premium to provide UM/UIM coverage for those vehicles. By offering Ernst Young UM/UIM coverage pursuant to R.C. '3937.18, Federal conveyed its intent Ohio law would apply. Ernst Young and Federal acknowledged a portion of the vehicles would be principally garaged in Ohio, thus conceding their understanding a certain amount of risk in Ohio.
 {¶ 27} Accordingly, the above factors demonstrate that Ohio has by far the greatest interest in the subject matter in dispute.
 {¶ 28} The question of UIM coverage applicable to Appellants under Appellee's policy when reviewed under applicable Ohio law rather than that of Pennsylvania is not the subject of this appeal and therefore has not been considered or addressed.
 {¶ 29} Based upon the foregoing, we sustain appellant's sole assignment of error.
 {¶ 30} For the foregoing reasons, the judgment of the Court of Common Pleas of Licking County, Ohio, is reversed and this matter is remanded to the trial court for proceeding consistent with this opinion.
By Boggins, J. Hoffman, P.J. and Edwrads, J. concur.